# IN THE UNITED STATES DISTRICT COURT FOR THE
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| **FRANCIS J. SAVARIRAYAN,** ) | |
| ) | |
|     **Plaintiff,** ) | |
| ) | |
| v. ) | **Case No. 2:07-0055** |
| ) | **Judge Trauger** |
| **WHITE COUNTY COMMUNITY** ) | |
| **HOSPITAL, et al.,** ) | |
| ) | |
|     **Defendants.** ) | |
| ) | |

## MEMORANDUM

Several matters are pending before the court in this litigation in which the plaintiff is proceeding *pro se*. First, there is Magistrate Judge Griffin's Report & Recommendation ("R&R") (Docket No. 101) and the eight motions that it addressed, that is, defendant John Wayne Allen's two Motions to Dismiss (Docket Nos. 28 and 47), defendants White County Community Hospital ("the Hospital"), Community Health Systems, Inc., ("CHS") and Gary Newsome's Motion for Summary Judgment and two Motions to Dismiss (Docket Nos. 30, 53, and 55, respectively), defendant Chad Griffin's Motion for Summary Judgment and Motion to Dismiss (Docket Nos. 42 and 46, respectively), and defendants Daniel Barnett and Blue Cross/Blue Shield of Tennessee's (Blue Cross's) Motion for Summary Judgment (Docket No. 59).

Second, there are several motions that have been filed by the plaintiff, Dr. Savarirayan,

1

following the issuance of the R&R.[1] (Docket Nos. 104, 109, 112, 121, 125, and 145.) Docket Nos. 104, 109, and 121, while being captioned as "Motion[s] to Dismiss the Motion for Summary Judgment" of a particular defendant, should properly be considered continued or supplemental responses to the particular defendant(s) motion for summary judgment. Consistent with the approach of the Magistrate, the court will "grant" these "motions" for the limited and sole purpose of considering the material therein. Similarly, Docket Nos. 112 and 125, while titled as an "Omnibus Motion" or an "appeal" are, in fact, simply the plaintiff's objections to the R&R, and, therefore, the court will "grant" these "motions," again, only for the limited and sole purpose of considering the argument therein. Docket No. 145, on the other hand, is the plaintiff's motion for leave to amend the Complaint, a motion that the court will consider, and deny, for the reasons expressed below. Finally, the Hospital has filed a Motion to Strike, for privacy reasons, a document from this court's ECF system and the case file. (Docket No. 146.) The court will grant that motion, for the reasons expressed below.

## FACTUAL AND PROCEDURAL BACKGROUND

The factual and procedural background of this case was thoroughly addressed by Magistrate Judge Griffin in the R&R, and, therefore, it is not necessary to fully recount that history. (See Docket No. 101 at 2-7.) For the purposes of understanding the basis for this

---

[1] Consistent with Magistrate Judge Griffin's assessment, the court considers Dr. Savarirayan to be the lone plaintiff in this case. As the R&R notes, "[t]he caption of the complaint lists both the plaintiff and the Commission on Quality Health Care in America ("CQHCA"), which is described as a 'Federal entity set up under Title IV of Public Law 99-660-The Health Care Quality Improvement Act of 1986.' ... However, the CQHCA is not specifically named as a plaintiff in the body of the complaint and all references to 'plaintiff' in the complaint are clearly intended to mean the plaintiff." (Docket No. 101 at 5.)

2

opinion, however, it is worthwhile to briefly discuss some of the undisputed key points, which are drawn from the R&R. First, this case involves a physician, Dr. Francis J. Savarirayan, who, in October 2002, entered into a Recruitment Agreement with the Hospital. In January 2004, after a period of discord between the parties, the Hospital and Dr. Savarirayan parted ways, with Dr. Savarirayan signing a "Settlement Agreement and Release of Claims" (the "Release"), which provided that Dr. Savarirayan broadly relinquished any claims against the Hospital (and its related entities and employees) arising out of the Recruitment Agreement. In exchange for this Release, the Hospital released its rights to pursue repayment of $260,789.44 in salary that it had previously paid to Dr. Savarirayan.

Despite signing the Release, Dr. Savarirayan pursued litigation against the Hospital and other entities. After initial discussions with attorney Tom Nebel, Dr. Savarirayan retained defendant attorney John Wayne Allen, who filed a lawsuit in the Tennessee Circuit Court for White County on January 26, 2007, asserting various claims on behalf of Dr. Savarirayan against various defendants. On March 14, 2007, a notice of voluntary dismissal with prejudice was filed by Allen, and an order of non-suit was entered by the Tennessee state court on April 9, 2007, dismissing all claims against all defendants with prejudice. The plaintiff, apparently disturbed by Allen's actions, fired Allen and pursued his state court litigation *pro se*. By order entered on November 19, 2007, the Tennessee state court set aside the prior order of dismissal. The state court subsequently conducted a hearing on the merits and dismissed all of the plaintiff's claims against all defendants with prejudice, concluding proceedings on January 17, 2008.

While the state court litigation was in flux, on August 24, 2007, the plaintiff, proceeding

3

*pro se*, filed this action, which, while based largely on the same set of facts as the state court action, added additional defendants and additional claims, that is, a Clayton Act (antitrust) claim against defendants Cain, Griffin, Barnett and Blue Cross, and a RICO claim against all defendants. (Docket No. 1.) In an Amended Complaint filed on September 6, 2007, the plaintiff added additional factual allegations against defendant Pincus and added a request for declaratory and injunctive relief directed at defendant Pincus, who was, as discussed below, subsequently dismissed without prejudice from this litigation.[2] (Docket No. 6.)

On December 21, 2007, the plaintiff filed a notice to dismiss this case, without prejudice. By order dated January 7, 2008, Magistrate Judge Griffin dismissed defendants Cain, Nebel, Pincus, Pekalo, PDBB, NPDB, and the three "John Doe" defendants. Pursuant to Federal Rule of Civil Procedure 41, however, the plaintiff could not dismiss, without prejudice, the remaining defendants, that is, the Hospital, CHS, Newsome, Griffin, Barnett, Blue Cross, and Allen, because those defendants had either filed an answer or moved for summary judgment at the time the request for dismissal was filed.

After summary judgment and motion to dismiss briefing, Magistrate Judge Griffin issued her Report & Recommendation on September 12, 2008. (Docket No. 101.) Judge Griffin concluded (1) that the claims against the Hospital, CHS, and Newsome were barred by the

---

[2]In a response to defendant Pekalo's motion to dismiss, the plaintiff attached another amended Complaint, which added a Title VII claim directed against defendant Pekalo. (Docket No. 35 Ex. 1.) There was no motion for leave to amend filed, and defendant Pekalo has been dismissed, without prejudice, from this litigation. Therefore, consistent with Magistrate Judge Griffin's assessment, the court views the Docket No. 6 Amended Complaint as the plaintiff's operative Complaint.

4

doctrine of *res judicata* and the Release; (2) that the claims against Blue Cross, Barnett, and Griffin were barred by *res judicata* and, therefore, it was not necessary to consider these defendants' other stated grounds for relief; and (3) that the claims against defendant Allen should be dismissed for failure to state a claim upon which relief could be granted. Therefore, the R&R made a recommendation as to how all of the pending motions should be resolved and recommended that the case be dismissed as to all remaining defendants. (*Id.* at 17.) [3]

On September 26, 2008 and again on September 29, 2008, the plaintiff filed what can fairly be considered to be objections to the R&R. (Docket Nos. 112 and 125.) The plaintiff did not make specific objections to specific provisions of the R&R. Rather, he argued that the R&R should be vacated because it is supposedly unfounded in "the truth or the facts," because the plaintiff did not have adequate time for discovery, and because Judge Griffin issued the R&R on the same day that the plaintiff filed a series of materials responsive to various defendants' motions. (*Id.*)

In light of these objections, the plaintiff asked (1) for "a *de novo* review of the entire

---

[3] Formally, Judge Griffin recommended that (1) defendant Allen's First Motion to Dismiss (Docket No. 28) be granted and his Second Motion to Dismiss (Docket No. 47) be denied; (2) the Hospital, CHS, and Newsome's Motion for Summary Judgment and their two Motions to Dismiss (Docket Nos. 30, 53, 55) be granted; (3) defendant Griffin's Motion for Summary Judgment (Docket No. 42) be granted and his Motion to Dismiss (Docket No. 46) be denied; and that (4) Barnett and Blue Cross' Motion for Summary Judgment (Docket No. 59) be granted. According to the R&R, the denial of Allen and Griffin's second motion to dismiss would be technical, and the Magistrate recommended that the plaintiff's claims be dismissed against these defendants on the basis of their respective initial dispositive motion. Judge Griffin also noted that the counterclaims of the Hospital, CHS, Newsome, Barnett, and Blue Cross were not affected by the R&R. (Docket No. 101 at 17.) Since the R&R was issued, the parties have provided no further briefing on any counterclaims, and, therefore, this court's opinion does not bear on any counterclaims either.

5

case"; (2) that the stay of discovery be lifted; (3) that Judge Griffin recuse herself and vacate her orders if she has any of several listed biases or interests; (4) that the defendants' dispositive motions be dismissed and all defendants be re-instated for trial; (5) that the plaintiff be provided with notice and an opportunity to cure from this court if there are any "magic words" that he failed to use in his filings that might make a difference in the outcome of the litigation; and, finally, (6) that his objection serve as notice of appeal to the Sixth Circuit if this court rejected his arguments therein. (*Id.*)

On January 20, 2009, the plaintiff filed his motion for leave to amend his Complaint, asking that the court allow him to amend his Complaint such that his claims would, allegedly, no longer be barred by *res judicata* principles. (Docket No. 145.) That day, for reasons that are somewhat unclear, the plaintiff filed an affidavit re-stating his medical qualifications and certain other points. (Docket No. 146.) The plaintiff also attached about forty pages of additional documents, tangentially related to the allegations in this case. (*Id.*) The next day, the Hospital filed a motion to strike one of those pages because, it claims, confidential patient information is improperly disclosed on that page. (Docket No. 147.)

## I.     Standard of Review

Under Federal Rule of Civil Procedure 72(b) and 28 U.S.C. § 636(b)(1), the court is required to make a *de novo* determination of any part of the Magistrate Judge's R&R to which specific objection has been made. The district judge may accept, reject, or modify the recommended decision, receive further evidence, or recommit the matter to the magistrate judge with instructions. Fed. R. Civ. P. 72(b)(3).

6

## II.     Analysis

As noted above, pending before the court are Magistrate Judge Griffin's R&R, the motions that were addressed therein, and two additional motions, that is, the plaintiff's motion for leave to amend his Complaint, and the Hospital's Motion to Strike. When a motion for leave to amend is filed while the R&R is pending, it is proper for the district court to address the R&R first.[4]  *City of Columbus v. Hotels.com, L.P.*, 2007 WL 2029036, *2 (S.D. Ohio July 10, 2007).

## II.     Magistrate Judge Griffin's R&R

As discussed above, Magistrate Judge Griffin recommended that the plaintiff's case be dismissed, with prejudice, against all remaining defendants, that is, the Hospital, CHS, Newsome, Griffin, Barnett, Blue Cross, and Allen. (Docket No. 101 at 14-17.) With the exception of defendant Allen, the primary basis for Judge Griffin's recommendation is that the plaintiff's claims against these defendants are barred by *res judicata* principles.[5] (*Id.* at 9-14.) Judge Griffin also noted that, even if *res judicata* did not bar the plaintiff's claims, the Hospital, CHS, and Newsome should still be entitled to summary judgment on the plaintiff's claims

---

[4] The Hospital's Motion to Strike cites a provision in the Tennessee Rules of Court – Federal and the Health Insurance Portability and Accountability Act (HIPAA) for the notion that the private information about certain patients disclosed on page 15 of the plaintiff's 44-page filing contained in Docket No. 146 should be stricken. (Docket No. 147.) While the Hospital has failed to show its standing to enforce these patients' HIPAA rights, it is inappropriate and unnecessary for the private medical information of patients not remotely involved in this proceeding to be part of the publicly available case file or to be posted on the ECF. The court will order the page removed from the case file and the ECF but will not sanction the plaintiff, as the Hospital also requested. (*Id.*)

[5] Apparently, the Tennessee state court never issued a final order on the plaintiff's legal malpractice claim against Allen, and, therefore, the R&R concluded that this claim is not barred by *res judicata* principles. (See Docket No. 145 Ex. 1.)

7

against them because of the Release that the plaintiff signed in January 2004.  (*Id.* 12-13.)  As to defendant Allen, Judge Griffin recommended that his first Motion to Dismiss be granted, because the plaintiff failed to plead any facts by which one could construe that the alleged legal malpractice caused the plaintiff an injury.  (*Id.* at 16.)

As noted above, in his "Omnibus Motions," which this court interprets as the plaintiff's objections to the R&R, the plaintiff did not make any specific objections to Judge Griffin's specific findings, instead arguing that the R&R should be vacated because it is supposedly unfounded in "the truth or the facts," because the plaintiff did not have adequate time for discovery, and because Judge Griffin issued the R&R on the same day that the plaintiff filed a series of materials responsive to various motions.  (Docket Nos. 112 and 125.)   As to the latter two arguments, they are plainly without merit.  The plaintiff has failed to show how additional time for discovery would change the result in this case, which rests entirely on legal principles that will not change no matter the time for discovery allotted.  Further, this court has reviewed the materials that the plaintiff filed on the day Judge Griffin issued her R&R, and this court makes the final order.  The court will consider, however, whether Judge Griffin's R&R is supported by "the truth or the facts," that is, based on the plaintiff's objection, the court will consider the legal foundation for the recommendations in the R&R.[6]

---

[6] As mentioned in the factual discussion, following Judge Griffin's R&R, the plaintiff has continued to file various materials, motions, and responses, and, in one of those responses, the plaintiff specifically challenges the *res judicata* finding by arguing that the finding is "irrelevant" because the Tennessee court was not "fair and impartial" and a federal court should not be "subservient" to a state court.  (Docket No. 134.)  This argument is not supported by anything more than the plaintiff's rampant speculation and innuendo.  Further, it is a well-settled principle of comity that the forum in which the civil plaintiff must complain about any unfair

This court concludes, with one exception that does not affect the outcome of the litigation as to the remaining defendants, that Judge Griffin's recommendation as to how the motions pending before her should be resolved was well founded.

As noted above, Judge Griffin concluded that the claims against the Hospital, CHS, Newsome, Griffin, Blue Cross and Barnett should be dismissed based on *res judicata* principles. In the R&R, Judge Griffin correctly noted that a federal court must give to a state court judgment the same preclusive effect as would be given that judgment under the law of the state in which the judgment was rendered, here Tennessee. (Docket No. 101 at 10, citing, among other case law, *Hutcherson v. Lauderdale County*, 326 F.3d 747, 758 (6th Cir. 2003)). Judge Griffin also correctly found that, under Tennessee law, the doctrine of *res judicata* bars "all claims that were actually litigated or *could* have been litigated in the first suit between the same parties." (*Id.* citing *Am. Nat'l Bank & Trust Co. of Chattanooga v. Clark*, 586 S.W. 2d 825, 826 (Tenn. 1979)) (emphasis added). Noting that the "instant action is a virtual carbon copy of the action which was dismissed with prejudice on the merits by the state court," Judge Griffin concluded, for every defendant but defendant Allen, that all of the claims in the federal action could have been brought in state court and, therefore, were barred by *res judicata* principles. (Docket No. 101 at 10.)

By way of review, in his state court Amended Complaint (Docket No. 42 Ex. B), the plaintiff alleged claims for (1) breach of contract, (2) violation of 42 U.S.C. § 1981, (3) tortious interference with a business relationship, (4) violation of the Tennessee Consumer Protection

---

treatment at the state court trial level is the state court of appeals, not the federal district court.

Act, and (5) legal malpractice and fraud. In his federal Amended Complaint, the plaintiff re-alleged these five claims, and added Clayton Act (antitrust) and RICO claims. (Docket No. 6.)

Obviously, the state law causes of action and the section 1981 claim could have been brought in the state court, and, indeed, they were brought in state court. Therefore, Judge Griffin correctly concluded that those claims are barred here by *res judicata* principles. That said, the R&R does not review, claim by claim, whether the federal claims that the plaintiff added in his federal complaint (RICO and the Clayton Act) could have been brought in the state court action. This court's review of the law indicates that it is well settled that claims under RICO may be properly brought in either state or federal court. *Tafflin v. Levitt*, 493 U.S. 455, 466 (1990). Therefore, the R&R correctly recommended that the RICO claim be dismissed based on *res judicata* principles.

The Clayton Act claim, however, is a different story; jurisdiction for Clayton Act claims is exclusively federal. *See e.g. Tafflin*, 493 U.S. at 463 (contrasting Clayton Act and RICO); *In re Copper Antitrust Litig.*, 436 F.3d 782, 796 (7th Cir. 2006) (noting the Clayton Act's "exclusive federal jurisdiction"); *Roma Const. Co. v. aRusso*, 96 F.3d 566, 582 (1st Cir. 1996) (Lynch, J. concurring) (noting "the fact that actions under the Clayton Act may only be brought in federal court.") The fact that Clayton Act claims may only be brought in federal court means that the R&R is incorrect when it recommends that the plaintiff's Clayton Act claims be dismissed because they could have been brought in state court. Therefore, the court must consider the merits of the plaintiff's Clayton Act/antitrust claim, in light of the relevant

10

defendants' motions for summary judgment.[7]

In his Clayton Act/antitrust claim, the plaintiff alleges that former defendant Cain, and current defendants Griffin, Barnett and Blue Cross "acted in a concerted coordinated manner to limit and destroy [the plaintiff's] practice, so that he will not be able to compete against the white ethnic American Medical School graduates practicing in that area." (Docket No. 35 Ex. 1 at 21.) The plaintiff argues that the defendants achieved this result through a two-step process: (1) Cain, as the plaintiff's superior, took a number of administrative measures to undermine the plaintiff's practice and (2) Barnett and Blue Cross denied the plaintiff's request to participate in the Blue Cross/Blue Shield network, but allowed a less qualified "white ethnic American" to participate in the network. (*Id.* at 21-22.) The plaintiff alleges that Blue Cross believes it is "untouchable" because of the large financial contributions it, allegedly, makes to influential political officials. (*Id.* at 22.)

The remaining defendants subject to the plaintiff's Clayton Act/antitrust claim, that is, defendants Griffin, Barnett and Blue Cross, all moved for summary judgment on this claim for reasons aside from *res judicata*. In Barnett and Blue Cross's Brief in Support of their Motion of Summary Judgment, they argue that their only involvement with the plaintiff was to review the plaintiff's 2003 request for "Network Credentialing," which they denied after determining that

---

[7]Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be granted if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). To prevail, the moving party must meet the burden of proving the absence of a genuine issue of material fact as to an essential element of the opposing party's claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Logan v. Denny's, Inc.*, 259 F.3d 558, 566 (6th Cir. 2001).

11

the plaintiff had not been honest in providing information in support of his request. (Docket No. 60 at 8.) In light of this, these defendants argue that the plaintiff has "failed to plead even the most basic facts supporting" his Clayton Act/antitrust claim. (*Id.* at 9.) In support of his motion for summary judgment, defendant Griffin likewise argues that there are no facts to support the plaintiff's claims, including his Clayton Act/antitrust claim. (Docket No. 44 at 7.)

These defendants are entitled to summary judgment on the plaintiff's Clayton Act/antitrust claims. In order to maintain an antitrust claim, the plaintiff must allege an "antitrust injury," that is an injury of the sort that the antitrust laws were designed to prevent; in other words, the plaintiff must allege an injury to competition, not just allege anti-competitive behavior or behavior that is otherwise tortious or violates federal law. *Expert Masonry v. Boone County*, 440 F.3d 336, 347-48 (6th Cir. 2006).

Plainly, there are several fatal problems with the plaintiff's Clayton Act/antitrust claim. First, as to defendant Griffin, there is no actual allegation of antitrust wrongdoing, which makes Griffin entitled to summary judgment on this claim. As to Barnett and Blue Cross, the plaintiff alleges behavior that, perhaps, if shown to be true, might be considered discriminatory, but the behavior alleged certainly does not implicate federal antitrust law and the required "antitrust injury." *Id.* Indeed, an "antitrust injury" arises in a narrowly defined circumstance, in which the plaintiff alleges that, in addition to being potentially tortious or otherwise unlawful, the conduct was injurious to competition generally. *Id.* It is hard to conceive of a circumstance in which one doctor being denied network privileges or being removed from practice at a hospital could be injurious to competition generally, and the plaintiff has certainly failed to allege such a

12

circumstance here. Therefore, the defendants are entitled to summary judgment on the plaintiff's Clayton Act/antitrust claim.

As a final point on the R&R, Judge Griffin recommended that defendant Allen's first Motion to Dismiss be granted, because the plaintiff failed to allege, as required, that any mistakes by Allen as an attorney were the cause of the plaintiff's damages. (Docket No. 101 at 15 citing *Gibson v. Trant*, 58 S.W. 3d 103, 108 (Tenn. 2001)). As Judge Griffin pointed out, because the state court judge set aside the order of dismissal and allowed the state court case to proceed after the plaintiff had discharged Allen, "any damages suffered by the plaintiff which were attributable to how the case had been previously handled by Defendant Allen were cured and the plaintiff remained in the same position in that lawsuit as he had been prior to the entry of dismissal." (*Id.* at 16.) On the basis of this sound reasoning, the court concludes that the R&R makes the appropriate recommendation as to the disposition of defendant Allen's Motion to Dismiss.

Therefore, the court will adopt the R&R's recommendation as to how the motions that were before Magistrate Judge Griffin should be resolved. The court provides the more extended discussion above only to clarify an important point of law related to the Clayton Act.[8]

---

[8] As noted above, in his R&R objections, the plaintiff asked to be provided with notice and an opportunity to cure from this court if there are any "magic words" that he failed to use in his briefing that might make a difference in the outcome of the litigation, and the plaintiff asked that his R&R objection serve as a notice of appeal to the Sixth Circuit if this court rejected his arguments therein. (Docket Nos. 112 and 125.) The request for "notice of magic words" is unsupported by any law of which this court is aware. Also, importantly, the plaintiff's R&R objections do not serve as a notice of appeal to the Sixth Circuit. The plaintiff must make a formal appeal based on the relevant rules of procedure.

13

### III.     Motion For Leave To Amend

The plaintiff filed a motion for leave to amend his Complaint on January 20, 2009. (Docket No. 145.)  In his motion, the plaintiff claims that recently "in Illinois, for the first time [the plaintiff] was able to get legal opinion with reference to Matters of Law.  It is the firm opinion of his attorney for matters of law, that a second amended complaint should be filed, to prevent the defendants from escaping the consequences of their actions, on legal technicalities." (Docket No. 145 at 1.)  While the proposed amended Complaint contains the same factual allegations as the operative Complaint (including those against dismissed defendants), the plaintiff is very clear that this proposed amended Complaint is only directed at the parties who were not dismissed, without prejudice, from this litigation.  (*Id.*)

As to the remaining defendants, the factual allegations in the proposed Complaint and the operative Complaint appear identical.  The only distinction between the two Complaints is that some of the claims are different.  As with the previous Complaint, based on the same allegations, the plaintiff asserts antitrust and RICO claims.  The plaintiff adds a claim for fraud (primarily against CHS, the Hospital and Newsome), defamation, violation of "Title VII/federal Civil Rights" law, and conspiracy to violate his rights under the Seventh, Thirteenth, and Fourteenth Amendments to the U.S. Constitution.  (Docket No. 145 Ex. 1.)   The plaintiff also recasts his legal malpractice claim, alleging that defendant Allen took money from Blue Cross and the Hospital to "throw the case."  (*Id.*)  On various grounds, the remaining defendants have all filed briefing objecting to the plaintiff's motion for leave to amend.

Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend a

14

pleading should be freely given "when justice so requires." Fed. R. Civ. P. 15(a). The district court is to consider several factors when determining whether to grant a motion for leave to amend, such as "undue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment." *Wade v. Knoxville Utilities Bd.*, 259 F.3d 452, 458 (6th Cir. 2001). Delay in filing, by itself, is not a sufficient reason to deny a motion for leave to amend. *Id.*

Here, delay, prejudice, and futility all dictate that the court should deny the plaintiff's motion for leave to amend. As to delay and prejudice, the *Wade* case is squarely on point. There, the plaintiff, without excuse, "waited a year and a half" before filing his motion for leave to amend. *Id.* Here, the plaintiff also waited about a year and one-half, without any reasonable excuse for doing so.[9] In *Wade*, the Sixth Circuit noted that, "when amendment is sought at a late stage in the litigation, there is an increased burden to show justification for failing to move earlier." *Id.* Here, the plaintiff utterly fails to meet that burden.

Recognizing that delay, by itself, is an insufficient basis for denying a motion for leave to amend, the *Wade* court, in circumstances very similar to this case, determined that prejudice to the defendants, combined with the delay, also indicated that the court should deny the motion for leave to amend. In *Wade,* motions for summary judgment on all of the claims in the initial complaint had already been filed at the time the motion for leave to amend was filed, as is the

---

[9] The court does not view the plaintiff's receiving some kind of advice from a lawyer in Illinois who has not entered an appearance of record in this case on behalf of the plaintiff as a reasonable excuse for the delay.

15

case here.  *Id.*  Given the delay and the status of the case, the *Wade* court concluded that it would be unduly prejudicial to the defendants to ask them to now prepare defenses to a whole new set of claims.  *Id.* at 459.  The same burden is imposed here; the defendants have now been defending this litigation in two forums for several years, and it would be unduly prejudicial, at this late stage, to ask the defendants to commit more time and resources to defending this case, particularly in light of the plaintiff's delay in filing his motion for leave to amend and his limited justification for that delay.

Further, it would be futile for the court to grant this motion for leave to amend.  Plainly, for the reasons discussed above in the R&R section, the antitrust and RICO claims would not be viable.  While it is not clear who is the target of the plaintiff's "Title VII/Civil Rights Act" claims, even assuming that these claims are broadly directed at all remaining defendants, these claims could have been brought in the state court litigation and are, therefore, barred under *res judicata* principles.  *See Yellow Fright Sys., Inc. v. Donnelly*, 494 U.S. 820, 821 (1990).  Additionally, the plaintiff's fraud claim (directed at CHS, Newsome and the Hospital and their conduct in inducing the plaintiff to sign the Recruitment Agreement) is barred by *res judicata* principles and the Release that the plaintiff signed when he left the Hospital, which released the Hospital, its parent (i.e. CHS) and their employees (i.e. Newsome) from liability for any and all claims "in any way relating to or arising out of the Recruitment Agreement."  (Docket No. 9 Ex. H.)  As the R&R noted, "the terms of the Settlement Agreement are clear and unambiguous and bar [the plaintiff] from pursuing" such claims against the Hospital, CHS, and Newsome.  (Docket No. 101 at 13 citing *Evans v. Tillet Bros. Const. Co., Inc.*, 545 S.W. 2d 8, 11 (Tenn. Ct.

16

App. 1976)).[10]

Likewise, the plaintiff's defamation claim would not be successful. In one of his more tempered allegations, the plaintiff contends that Blue Cross' refusal to grant him Network privileges and the Hospital's refusal to employ him "caused a cloud to hang over Plaintiff's qualifications as a Physician," resulting in a loss of business. (Docket No. 145 Ex. 1.) This claim, despite its increased focus and clarity, would still fail. Not only would this claim be barred by *res judicata* principles, but, setting aside that and the requirements to state a *prima facie* case of defamation, as Blue Cross points out, the defamation claim would be time-barred, as it concerns events that occurred in 2003 and 2004, and the statute of limitations is six months for slander and one year for libel. (Docket No. 150 at 4 citing T.C.A. § 28-3-103; T.C.A. § 28-3-104.)

The plaintiff's conspiracy claim is similarly futile. The plaintiff does not explain the basis of his allegation of conspiracy to violate the Seventh, Thirteenth, and Fourteenth Amendments. As to the Seventh Amendment, which concerns the right to a civil trial by jury, the plaintiff does frequently mention his frustration with the fact that this case has not been heard by a jury, but the facts of this case fail to show any sort of conspiracy by these defendants to violate that right. As to the Thirteenth and Fourteenth Amendment violations, it is possible that the plaintiff is attempting to state a claim under Section 1983, but the plaintiff would have to

---

[10] The rest of the "fraud" claim is a lengthy discussion of what the plaintiff perceives as a "fraudulent liaison" between the defense attorneys in this case and the Tennessee judicial system to get his case transferred to favorable, hand-picked judges. (*Id.*) The court does not view this allegation as helpful to the plaintiff's fraud claim against the defendants in this case.

17

show a constitutional violation by a person acting under color of state law, something which does not appear implicated by the facts of this case. *West v. Atkins*, 487 U.S. 42, 48 (1988).

Finally, while the plaintiff has re-cast his legal malpractice claim, he has failed to address the fundamental issue raised in the R&R, which is that the plaintiff cannot show that any of Allen's legal mistakes caused him any harm. Therefore, it would likewise be futile to bring this claim. In sum, the plaintiff's motion for leave to amend will be denied because of delay, substantial prejudice, and futility.

## **CONCLUSION**

For the reasons stated herein, the court agrees with the disposition of the motions as described in Judge Griffin's Report and Recommendation. Also, the plaintiff's motion for leave to amend will be denied, and the Hospital's Motion to Strike will be granted. The court considers all pending motions resolved, and all claims raised by the plaintiff in this action will be dismissed, with prejudice, as to Defendants White County Community Hospital, Community Health Systems, Inc., Gary Newsome, Chad Griffin, Daniel Barnett, Blue Cross/Blue Shield of Tennessee, and John Wayne Allen.

An appropriate order will enter.

 ALETA A. TRAUGER
 United States District Judge